OPINION FILED: May 29, 2018 Motion for Rehearing and/or Transfer to Supreme Court Denied July 3, 2018 Application for Transfer Denied September 25, 2018
Mark D. Pfeiffer, Chief Judge *473 Midwest Emergency Medical Services, P.C. and Dr. Brandie Niedens appeal from the judgment of the Circuit Court of Clay County, Missouri ("trial court"), denying their motion for new trial on the wrongful death claim of Ms. Johnna Hughes ("Ms. Hughes"), for the death of her baby. We affirm.
Factual and Procedural Background[1]
Ms. Hughes went to North Kansas City Hospital ("Hospital") in Kansas City, Missouri, in September of 2010 for treatment of abdominal pain. At the time, she was 35 weeks pregnant. Ms. Hughes's pregnancy had been deemed high risk due to her age and her pre-existing blood clotting disorder. Dr. Brandie Niedens, M.D., an employee of Midwest Emergency Medical Services, P.C. ("Midwest") was Ms. Hughes's attending physician at the Hospital.
Dr. Niedens ordered pain medication, nausea medication, IV fluids, laboratory blood tests, and an abdominal ultrasound for Ms. Hughes. After Dr. Niedens's interpretation of the ultrasound as a "resolving hematoma" which, in fact, was not resolving but continuing to bleed internally, Ms. Hughes was discharged by Dr. Niedens. Approximately one day later, Ms. Hughes's baby died from complications related to the internal bleeding.
In September of 2012 and relevant to this appeal, Ms. Hughes filed a wrongful death petition for damages against, among others, Midwest and Dr. Niedens. Ms. Hughes claimed, in part, that Dr. Niedens's conduct in not having Ms. Hughes admitted to the Hospital for monitoring of the hematoma was negligent and caused the wrongful death of her unborn baby.
The case proceeded to trial in May of 2016. Ms. Hughes presented the testimony of Dr. Kurt Krueger, Ph.D., an expert economist who testified about economic damages arising from the death of Ms. Hughes's baby. Midwest and Dr. Niedens objected to Dr. Krueger's testimony, arguing that it lacked foundation and the trial court overruled the objection and permitted Dr. Krueger's testimony. At the close of trial, the jury returned a verdict in favor of Ms. Hughes and against Midwest and Dr. Niedens on the wrongful death claim for, in relevant part, economic damages in the amount of $125,000.[2] Midwest and Dr. Niedens timely filed their motion for new trial. The trial court denied the motion for new trial, after which Midwest and Dr. Niedens timely filed their notice of appeal.[3]
Discussion
In their sole point on appeal, Midwest and Dr. Niedens argue that the trial court erred in admitting Dr. Krueger's expert testimony regarding the calculation of Ms. Hughes's pecuniary losses regarding her wrongful death claim because they argue it lacked foundation. Specifically, they argue *474 that Dr. Krueger's testimony was based on an erroneous application of presumed pecuniary losses pursuant to section 537.090.[4]
Dr. Krueger's Testimony and the Jury's Economic Damages Award
Relevant to this appeal, Dr. Krueger described his economic damages calculation pursuant to section 537.090. Section 537.090 reads, in pertinent part:
In every action brought under section 537.080, the trier of the facts may give to the party or parties entitled thereto such damages as the trier of the facts may deem fair and just for the death and loss thus occasioned, having regard to the pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which those on whose behalf suit may be brought have been deprived by reason of such death and without limiting such damages to those which would be sustained prior to attaining the age of majority by the deceased or by the person suffering any such loss.... If the deceased is under the age of eighteen, there shall be a rebuttable presumption that the annual pecuniary losses suffered by reason of the death shall be calculated based on the annual income of the deceased's parents, provided that if the deceased has only one parent earning income, then the calculation shall be based on such income , but if the deceased had two parents earning income, then the calculation shall be based on the average of the two incomes.
(Emphasis added.)
The jury's itemized verdict as to Ms. Hughes's wrongful death claim awarded her $25,000 for past economic damages and $100,000 for future economic damages, for a combined total of $125,000 in economic damages, a figure much less than the section 537.090 presumed pecuniary loss calculation presented by Dr. Krueger.
Standard of Review
The admissibility of expert testimony in Missouri civil cases is controlled by section *475 490.065. Kivland v. Columbia Orthopaedic Grp., LLP , 331 S.W.3d 299, 310 (Mo.banc 2011). Section 490.065 directs the trial court to determine whether "(1) the expert is qualified; (2) the expert's testimony will assist the trier of fact; (3) the expert's testimony is based upon facts or data that are reasonably relied on by experts in the field; and (4) the facts or data on which the expert relies are otherwise reasonably reliable." Id. at 311.
As a rule, questions regarding the sources and bases of expert witness testimony and opinions affect the weight, not the admissibility, of such evidence. Doe v. McFarlane , 207 S.W.3d 52, 62 (Mo.App.E.D. 2006) (citing Wulfing v. Kansas City Southern Indus., Inc. , 842 S.W.2d 133, 152 (Mo.App.W.D. 1992), overruled on other grounds by Exec. Bd. of Mo. Baptist Convention v. Carnahan , 170 S.W.3d 437, 447 n.5 (Mo.App.W.D. 2005) ). The mere reference to the foundational requirements of expert testimony does not change our standard of review when the essential question is whether the evidence was of sufficient weight to assist the jury. "Only in cases where the sources relied on by the expert are 'so slight as to be fundamentally unsupported,' should the opinion be excluded because testimony with that little weight would not assist the jury." Id. (quoting Wulfing , 842 S.W.2d at 152 ).
The trial court has considerable discretion as to the admissibility of evidence, and appellate review of this issue is limited to reversal only for an abuse of discretion. Secrist v. Treadstone, LLC , 356 S.W.3d 276, 280 (Mo.App.W.D. 2011). An abuse of discretion occurs when the court's ruling is "clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." Mansfield v. Horner , 443 S.W.3d 627, 651 (Mo.App.W.D. 2014) (citing Secrist , 356 S.W.3d at 280 ). In addition, the appellant must show the trial court's erroneous decision caused outcome-determinative prejudice materially affecting the merits of the action. Reed v. Kansas City Mo. Sch. Dist. , 504 S.W.3d 235, 240 (Mo.App.W.D. 2016).
Midwest and Dr. Niedens argue that "Dr. Krueger's opinions were based on an unfounded legal interpretation of the 2005 amendment to [s]ection 537.090" and the trial court's admission of the opinion prejudiced them because it "resulted in the jury awarding pecuniary damages in excess of the highest possible calculation of Plaintiff's actual pecuniary loss."[5]
*476 Section 537.090 establishes a rebuttable presumption for pecuniary losses occasioned by the wrongful death of a minor. Statutory interpretation is focused on ascertaining the intent of the legislature from the language used in the statute, considering the words in their plain and ordinary meaning, and giving effect to that intent. Mansfield , 443 S.W.3d at 659 (quoting Hervey v. Mo. Dep't of Corr. , 379 S.W.3d 156, 163 (Mo.banc 2012) ). This Court is to apply statutory language in a way that promotes the apparent object of the legislative enactment. Id. at 661. The Wrongful Death Act is a remedial statute, and therefore the courts must construe section 537.090 liberally to promote the statute's purpose. Poage v. Crane Co. , 523 S.W.3d 496, 526 (Mo.App.E.D. 2017) (citing Delacroix v. Doncasters, Inc. , 407 S.W.3d 13, 24 (Mo.App.E.D. 2013) ).
Section 537.090, which provides the framework for the calculation of damages in a wrongful death case, states as follows:
In every action brought under section 537.080, the trier of the facts may give to the party or parties entitled thereto such damages as the trier of the facts may deem fair and just for the death and loss thus occasioned, having regard to the pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which those on whose behalf suit may be brought have been deprived by reason of such death and without limiting such damages to those which would be sustained prior to attaining the age of majority by the deceased or by the person suffering any such loss. In addition, the trier of the facts may award such damages as the deceased may have suffered between the time of injury and the time of death and for the recovery of which the deceased might have maintained an action had death not ensued. The mitigating or aggravating circumstances attending the death may be considered by the trier of the facts, but damages for grief and bereavement by reason of the death shall not be recoverable. If the deceased was not employed full time and was at least fifty percent responsible for the care of one or more minors or disabled persons, or persons over sixty-five years of age, there shall be a rebuttable presumption that the value of the care provided, regardless of the number of persons cared for, is equal to one hundred and ten percent of the state average weekly wage, as computed under section 287.250. If the deceased is under the age of eighteen, there shall be a rebuttable presumption that the annual pecuniary losses suffered by reason of the death shall be calculated based on the annual income of the deceased's parents, provided that if the deceased has only one parent earning income, then the calculation shall be based on such income, but if the deceased had two parents earning income, then the calculation shall be based on the average of the two incomes.
(Emphasis added.)
The final two sentences of the section provide an express, presumptive basis for the calculation of a figure for the economic damages arising from the death of (1) a person not employed full time due to serving as a caregiver to minors or disabled persons and of (2) a person who was a minor at the time of his or her death.
Midwest and Dr. Niedens argue that the language guiding the two calculations is different: the presumption for caregivers *477 is specifically that "the value of the care provided, regardless of the number of persons cared for, is equal to one hundred and ten percent of the state average weekly wage, as computed under section 287.250[,]" whereas the presumption as to minors is "that the annual pecuniary losses suffered by reason of the death shall be calculated based on the annual income of the deceased's parent[ (s) ]." Midwest and Dr. Niedens essentially contend that because the legislature was familiar with the verbiage "is equal to" and its ability to set a precise formula for the calculation of presumed pecuniary losses when it enacted the 2005 amendments, and it elected to use the phrase "shall be calculated based on" to establish the presumptive basis for the calculation of such losses in the case of the wrongful death of a minor, significance must attach to that choice in verbiage, rather than treating the two phrases as statutory synonyms. Midwest and Dr. Niedens's argument ignores that Ms. Hughes's expert did not simply apply an "equal to" mathematical calculation of the number of past and future years of "annual income of the deceased's parent." Instead, the expert testified to his present value calculation of damages by basing it upon such annual income, and adjusting the presumptive amount based on additional factors relevant to assessing Ms. Hughes's pecuniary loss.
A careful reading of the plain language of section 537.090 reveals that the difference in verbiage in the sentences at issue merely creates different formulas for different periods of time and with different bases. The first is the finite calculation of the value of care being equal to one hundred and ten percent of the state average weekly wage, as computed under the Workers' Compensation statute; and the second, the annual pecuniary losses shall be calculated based on the annual income of the deceased's parent(s). For example, given that the span of time for the relevant "annual income of the deceased's parent(s)" could last decades into the future, the statutory language contemplated mathematical computations that may necessitate present value calculations regarding such "annual income." Further, where the caregiver sentence in section 537.090 contemplates an adult providing at least fifty percent of the care for certain dependent individuals and a corresponding finite mathematical calculation related to a percentage of the state average weekly wage, the last sentence of section 537.090 contemplates pecuniary losses that could be related to wage earning or the value of services provided within the home. Thus, the starting point of a jury's consideration of the latter sentence of section 537.090 is to base the pecuniary loss upon the annual income of the deceased minor's parent or parents, subject to the opportunity to rebut that number in an upward or downward manner with rebuttal evidence and argument.
Here, Dr. Krueger's calculation of Ms. Hughes's pecuniary losses under section 537.090 was "based on" Ms. Hughes's annual income, projected throughout Ms. Hughes's life expectancy, and adjusted to present value. Projecting for estimated lifespans and adjusting to present value are both calculations using the basis of the annual income of Ms. Hughes as plainly called for in the statute. Thereafter, Dr. Krueger testified to household consumption topics that should require the presumed pecuniary loss statutory amount to be a higher number and, conversely, counsel for Midwest and Dr. Niedens were given the opportunity to rebut the presumed statutory pecuniary loss figure to the contrary.
Dr. Krueger's calculation based on Ms. Hughes's income was of sufficient weight to assist the jury in determining an appropriate *478 amount of pecuniary losses authorized under section 537.090. Likewise, his methodology in reaching his estimate was reasonable within the statute's plain language.
Given the nature of Dr. Krueger's challenged testimony as establishing a rebuttable presumption under the statute, Midwest and Dr. Niedens had the opportunity to challenge Dr. Krueger's testimony, to point out any weakness and aid the jury in determining the appropriate weight to give his opinion. See Deck v. Teasley , 322 S.W.3d 536, 539 (Mo.banc 2010). In point of fact, Midwest and Dr. Niedens did successfully challenge the evidence through cross-examination of Dr. Krueger as the jury's award of pecuniary losses was much less than the section 537.090 presumed pecuniary loss calculation arrived at by Dr. Krueger.
The jury in this case was informed by Ms. Hughes's expert's testimony on her presumed pecuniary losses on her wrongful death claim and by the challenges to it put forth by Midwest and Dr. Niedens's cross-examination. It was for the jury to evaluate any weakness and concern about the accuracy of Dr. Krueger's methodology in calculating those losses. Kivland , 331 S.W.3d at 311. Clearly, the jury did just that.
Midwest and Dr. Niedens's point on appeal is denied.
Conclusion
Because the challenged expert witness testimony regarding her pecuniary losses arising from the wrongful death of her baby met the foundational requirements of section 490.065 and the rebuttable presumption of section 537.090, the trial court's ruling denying Midwest and Dr. Niedens's motion for new trial (arguing evidentiary admission error) is not erroneous and, hence, the judgment below is affirmed.
We review the facts of the case in a light most favorable to the trial court's ruling. Mansfield v. Horner , 443 S.W.3d 627, 640 (Mo.App.W.D. 2014) (citing St. Louis Cty. v. River Bend Estates Homeowners' Ass'n , 408 S.W.3d 116, 134 (Mo.banc 2013) ).
This amount was offset for settlements from other defendants. Additionally, the jury awarded other non-economic damages in its wrongful death claim verdict, but those damages are not the subject of the present appeal and Midwest and Dr. Niedens concede that, were we to grant relief, it would not be for a new trial on all issues-only the issue of the amount of Ms. Hughes's pecuniary losses occasioned by the wrongful death of her baby.
During the pendency of this appeal, Ms. Hughes died. On September 14, 2017, this Court sustained a Motion to Substitute Parties in which Shelly Denise Mansil was substituted for Ms. Hughes.
All statutory references are to the Revised Statutes of Missouri 2016 as supplemented through 2017, unless otherwise indicated.
Midwest and Dr. Niedens did not put on expert evidence of their own, and their cross-examination did not present a different presumptive basis figure or calculation for Ms. Hughes's pecuniary losses.