

# In the
# Missouri Court of Appeals
# Western District

| | |
|---|---|
| TARSHISH JONES, | ) |
| | ) |
| Respondent, | )    WD81671 |
| | ) |
| v. | )    OPINION FILED: |
| | )    February 13, 2019 |
| CITY OF KANSAS CITY, | ) |
| MISSOURI, | ) |
| | ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Justine E. Del Muro, Judge

Before Special Division: Zel M. Fischer, Special Judge, Presiding, Cynthia L. Martin, Judge and Gary D. Witt, Judge

The City of Kansas City, Missouri, ("City") appeals from a judgment entered following a jury trial which found that the City discriminated against Tarshish Jones ("Jones") on the basis of race in violation of the Missouri Human Rights Act ("MHRA").[1] The City argues the trial court erred in denying its motions for directed verdict and

---

[1] RSMo section 213.010 *et. seq.* Unless otherwise noted, all statutory references to the MHRA are to RSMo Supp. 2014, the version of the MHRA in effect at the time Jones filed a charge of discrimination in early 2015, and at the time Jones filed his civil action in late 2015. Inexplicably, the City's Appendix includes a copy of sections 213.055, 213.075 and 213.111 as amended in 2017. The MHRA as amended in 2017 is not applicable to Jones's case.

judgment notwithstanding the verdict ("JNOV"); in admitting Jones's expert witness testimony; in excluding the City's expert witness testimony; and in awarding attorneys' fees and costs. Finding no error, we affirm, and remand this matter for consideration of Jones's pending motion for an award of attorneys' fees incurred subsequent to the entry of judgment.

## Factual and Procedural Background[2]

Jones was employed as a firefighter with the Kansas City Fire Department ("KCFD") for more than 19 years. Jones was promoted to fire apparatus operator ("FAO") in 2003. After promotion to FAO, Jones sought promotion to captain on five separate occasions. Relevant to this case, Jones, an African-American, sought promotion to captain in 2012.

To be eligible for promotion to captain, a candidate must have ten years of service and a prior promotion to FAO. A candidate must also complete the captain's promotional process. When Jones sought promotion to captain in 2012, the captain's promotional process included four components. Each component was separately scored and equally weighted. The component scores were compiled to produce a composite score. A rankings list ("promotional roster") was then generated listing candidates from highest to lowest rank based on composite scores. The promotional roster controlled who was promoted to captain for two years, as vacancies were filled as they arose based solely on rank. It is not

---

[2]"On appeal in a jury-tried case, we review the evidence and reasonable inferences therefrom in a light most favorable to the jury's verdict, disregarding evidence to the contrary." *Dubinsky v. U.S. Elevator Corp.*, 22 S.W.3d 747, 749 (Mo. App. E.D. 2000) (citing *Seitz v. Lemay Bank and Trust Co.*, 959 S.W.2d 458, 461 (Mo. banc 1998)).

possible to determine how many candidates will be promoted from a promotional roster, as the number of captain vacancies can vary greatly from year to year.

The 2012 captain's promotional process materials were created by the KCFD with the assistance of an outside contractor. Three of the four components used in the 2012 captain's promotional process involved a written multiple-choice test, a tactical exercises test, and consideration of seniority up to 25 years. The fourth component was a scenario-based situational exercise (the "SE component"). The SE component is the only part of the 2012 captain's promotional process at issue in this case.

During the SE component exercise, candidates responded to three employee-based, management scenarios. The responses were video-taped. Each candidate received the same scenarios and was given four minutes to respond to each scenario.

The video-taped responses were watched by three assessors and independently scored. In 2012, the assessors were drawn from an internal pool of KCFD employees holding the rank of captain or higher.[3] The guidelines to initially score the SE component were developed with the assistance of the outside contractor, and included a benchmark rubric used to "check-off" certain topics when mentioned by a candidate. However, the guidelines were essentially subjective in nature, with the only mandatory scoring instruction being that ultimately, the assessors had to assign scores for each candidate in each scoring area within 1 point of each other. To satisfy this objective, the assessors met after independently scoring the candidates, and bartered or advocated for certain

---

[3]In 2014, the captain's promotional process was changed so that external assessors were used to score the SE component and the tactical exercises component.

candidates, with initial scores adjusted accordingly. This bartering process sometimes involved reviewing the videotaped responses of candidates to discuss a particular assessor's judgment about a response, and sometimes included advocacy by an assessor based on factors beyond those identified in the written scoring guidelines. Ultimately, after the bartering process, a composite score would be agreed upon as the candidate's SE component score. The notes used by the assessors to score the SE component were then destroyed, rendering it impossible to document the initial scores given by each assessor, or the manner in which scores changed during the bartering process.

During the 2012 captain's promotional process, Jones scored well on the multiple choice, tactical exercise, and seniority components. However, Jones only scored a 2.5 out of 7.0 on the SE component. Because of the low SE component score, Jones's composite score ranked him as the 42nd candidate eligible for promotion to captain on the promotional roster. Jones requested a review of his composite score, but his position on the promotional roster remained unchanged.

The 2012 promotional roster was used to promote candidates to captain through 2014. During that time, the top 17 candidates on the list were promoted to 16 captain vacancies,[4] with the last promotion occurring on December 14, 2014.

On January 23, 2015, Jones filed a charge of discrimination with the Missouri Commission on Human Rights ("MCHR"). Jones subsequently received a notice of right

---

[4]The death of one of the candidates ranked high on the promotional roster explains the discrepancy.

4

to sue letter, and then filed a race discrimination lawsuit in the Circuit Court of Jackson County on November 24, 2015.

At trial, Deputy Chief Garrett, who had previously served as an SE component assessor, but who did not serve as an assessor during the 2012 captain's promotional process, testified that African-American candidates were routinely underscored in the SE component in comparison to Caucasian candidates. Deputy Chief Garrett also testified that he could not recall a single African-American candidate who benefitted from the bartering process that occurred after initial scores were assigned by assessors. The jury heard evidence that although assessors were trained on the SE component scoring rubric and process, they did not receive any training to avoid implicit or explicit racial bias in scoring candidates.

Jones learned through discovery, and shortly before trial, that his SE component assessors had been Brian Cooley, C.J. Stevens, and Richard Davis ("Davis"). Davis, a KCFD captain, was placed on the 2012 SE component assessor panel as a designated minority member, although Davis refuses to self-identify as an African-American. Davis testified at trial that other assessors told him (he claimed jokingly) that he was harder on African-American candidates than Caucasian candidates.

Jones presented expert witness testimony from two former KCFD battalion chiefs who independently reviewed Jones's SE component score alongside the scores of five other captain candidates evaluated during the 2012 captain promotional process. The expert witnesses opined that Jones should have scored 5.4 on the SE component -- 2.9 points higher than Jones's actual SE component score. Had Jones scored a 5.4 on the SE

5

component, he would have ranked 15th on the 2012 promotional roster, and he would have been promoted to captain from the 2012 promotional roster.

The jury heard evidence that only 185 of the KCFD's 1,336 employees (13.5%) are African-Americans; that only 17 of the KCFD's 199 captains (8.5%) are African-American; and that only 3 of the KCFD's 27 battalion chiefs (11%) are African-American. In contrast, 40% of all City employees are African-American.

The City's equal employment opportunity and diversity manager acknowledged the risk of injecting bias in employment decisions when candidates for promotion are subjectively evaluated. Jones admitted evidence that the KCFD had not held any training concerning race discrimination or diversity in more than three years, and that the KCFD has never received training on implicit bias, while other City employees have received such training. The jury heard testimony that several KCFD fire stations are racially-segregated, and that KCFD Chief Paul Berardi was aware of complaints that African-American firefighters are retaliated against when traded into a station with all Caucasian firefighters. Witnesses testified to frequently hearing the word "n----r" and other racial slurs in the workplace. Statistical evidence demonstrated that it takes significantly more time for an African-American KCFD firefighter to be promoted than Caucasians.

Jones submitted his discrimination claim to the jury with a verdict director that required the jury to find that the City failed to promote him through the 2012 captain's promotional process, and that race was a contributing factor in this failure. The jury entered a verdict in favor of Jones and against the City on Jones's claim of race discrimination during the 2012 captain's promotional process, and awarded damages in the amount of

6

$356,694.69. The trial court entered judgment consistent with the jury's verdict, and awarded Jones attorneys' fees in the amount of $662,862.50 after applying a multiplier of 125 percent, and costs in the amount of $44,913.49.

The City filed this timely appeal. Other relevant facts will be addressed in connection with the City's points on appeal.

## Analysis

The City asserts five points on appeal challenging the trial court's denial of the City's motions for directed verdict and JNOV; the trial court's admission and exclusion of expert witness testimony; and the trial court's calculation of attorneys' fees and costs.

## Point One

The City's first point on appeal argues that the trial court erred in denying the City's motions for directed verdict and JNOV because Jones failed to file his charge of discrimination with the MCHR within 180 days of publication of the 2012 promotional roster. The City argues that publication of the tainted promotional roster on November 24, 2012 was the discrete act of discrimination about which Jones complains pursuant to section 213.075.1, and that use of the promotional roster for two years did not constitute a continuing violation that extended the time for Jones to file an administrative complaint.[5]

---

[5]Jones argues that the City has not preserved this argument for appellate review because: (i) the City argued different triggering acts of discrimination in its motions for directed verdict and for JNOV than the trigger argued on appeal; (ii) the City did not object to Instruction No. 7, the verdict director, on the basis of the statute of limitations, and (iii) the City failed to tender an instruction submitting to the jury for determination disputed facts essential to calculating the administrative filing deadline. We disagree.

We have reviewed the record and conclude that the City's motions for directed verdict and for JNOV did raise (among other possible triggers) publication of the 2012 promotional roster on November 24, 2012 as a discrete act of discrimination triggering the 180-day administrative complaint filing deadline.

In addition, the City included the affirmative defense of untimely filing of the administrative complaint in its answer and motions for directed verdict and JNOV. The City did not waive this defense by failing to repeat the

7

As such, the City argues that Jones's January 23, 2015 administrative complaint with the MCHR was untimely, preventing the submission of his civil claim of discrimination as a matter of law.[6]

"The standard for reviewing a denied motion for JNOV is essentially the same as for reviewing the denial of a motion for directed verdict." *Sanders v. Ahmed*, 364 S.W.3d 195, 208 (Mo. banc 2012). This standard is "whether the plaintiff made a submissible case." *Medical Plaza One, LLC v. Davis*, 552 S.W.3d 143, 153 (Mo. App. W.D. 2018). "'Whether the plaintiff made a submissible case is a question of law subject to *de novo* review.'" *Wagner v. Bondex Intern., Inc.*, 368 S.W.3d 340, 348 (Mo. App. W.D. 2012) (quoting *Moore v. Ford Motor Co.*, 332 S.W.3d 749, 756 (Mo. banc 2011)). To make a submissible case, "legal and substantial evidence [must] support[] each fact essential to liability." *Sanders*, 364 S.W.3d at 208. We "view[] the evidence in the light most favorable

---

defense as an objection to Jones's verdict director. *See Holmes v. Kansas City Missouri Bd. of Police Com'rs ex rel. its Members*, 364 S.W.3d 615, 622 n.3 (Mo. App. W.D. 2012) (holding that a defendant did not waive appellate review of an argument when it failed to object to a specific instruction or failed to tender an alternative instruction because the argument was included in the defendant's answer, and motions for directed verdict and JNOV); *see also Duerbusch v. Karas*, 267 S.W.3d 700, 707 (Mo. App. E.D. 2008).

Finally, the City's claim that Jones failed to timely file his administrative complaint raises an issue of law in this case. Jones's verdict director, Instruction No. 7, relied on the City's failure to promote him to captain to claim discrimination on the basis of race. The City's posited trigger date for this claim is November 24, 2012, the day the 2012 promotional roster was published. That date was not in dispute. Nor was it contested that the 2012 promotional roster served as the basis for making promotion decisions through 2014. All that remains to be determined is whether Jones's claim of discrimination for failure to promote accrued when the 2012 promotional roster was posted or was a continuing violation until the roster's use ended. That is a legal determination. Questions of law are not the proper subject of jury instructions. *See Eagle Star Group, Inc. v. Marcus*, 334 S.W.3d 548, 556 (Mo. App. W.D. 2010) (citing *Gillioz v. State Highway Comm'n*, 153 S.W.2d 18, 26 (1941)).

[6]In the argument portion of its brief, the City also argues that Jones's petition did not plead racial discrimination with regard to the 2012 captain's promotional process, and that as a result, the claim of discrimination relating to the 2012 captain's promotional process should not have been submitted to the jury as it exceeded the scope of the petition. This claim of error is not preserved for our review as it is distinct from the claim of error described in the City's first point on appeal, which is limited to a claim that Jones's administrative complaint with the MCHR was not timely filed. Rule 84.04(e) ("The argument [discussing a point relied on] shall be limited to those errors included in the "Points Relied On."). "'We do not review arguments and issues raised in the argument under a point that are not fairly encompassed by that point.'" *Johnson v. Mo. Dep't of Corrections*, 534 S.W.3d 869, 873 (Mo. App. W.D. 2017) (quoting *Nichols v. Div. of Emp't Sec.*, 399 S.W.3d 901, 904 (Mo. App. W.D. 2013)).

to the jury's verdict, giving the plaintiff the benefit of all reasonable inferences and disregarding evidence and inferences that conflict with that verdict." *Id.* "A court may reverse the jury's verdict for insufficient evidence only when there is a complete absence of probative fact to support the jury's conclusion." *Id.*

At the time Jones filed his administrative complaint with the MHRA, section 213.075.1 provided:

> Any person claiming to be aggrieved by an unlawful discriminatory practice may make, sign and file with the commission a verified complaint in writing, within one hundred eighty days of the alleged act of discrimination.

The City contends that Jones's administrative complaint was not timely filed, and that as a result, the case should not have been submitted as a matter of law. Though the City's Brief argues that publication of the 2012 promotional roster was the unlawful discriminatory practice which triggered Jones's obligation to file an administrative complaint within 180 days pursuant to section 213.075.1, the City mistakenly presumes, without discussion, that the timely filing of a section 213.075.1 administrative complaint is essential to civil liability under the MHRA.

In *Farrow v. St. Francis Medical Center*, 407 S.W.3d 579 (Mo. banc 2013), the Supreme Court of Missouri acknowledged section 213.075.1, but also noted section 213.111.1, which addresses the filing of a civil action for discrimination and provides, in pertinent part, as follows:

> If, after one hundred eighty days from the filing of a complaint alleging an unlawful discriminatory practice . . . the commission has not completed its administrative processing and the person aggrieved so requests in writing, the commission shall issue to the person claiming to be aggrieved a letter indicating his or her right to bring a civil action within ninety days of such

9

notice against the respondent named in the complaint. . . . Any action brought in court under this section shall be filed within ninety days from the date of the commission's notification letter to the individual but not later than two years after the alleged cause occurred or its reasonable discovery by the alleged injured party.

The Supreme Court concluded in *Farrow* that the filing of a timely administrative complaint with the MCHR is ***not*** a condition precedent to filing a civil action in the circuit court because:

[T]he only requirements imposed by section 213.111 to file a claim under the MHRA are that: (1) an employee file a charge with the Commission prior to filing a state court action; (2) the Commission issue a right to sue letter; and (3) the state court action be filed within ninety days of the issuance of the right to sue letter but no later than two years after the alleged cause occurred or its reasonable discovery by the alleged injured party. The statute does not read, "If, after one hundred eighty days from the filing of a *timely* complaint. . . ." This Court will not read such a requirement into the plain statutory language.

407 S.W.3d at 591.

In *State ex rel. Tivol Plaza, Inc. v. Missouri Commission on Human Rights*, 527 S.W.3d 837, 843-44 (Mo. banc 2017), the Supreme Court repeated the aforesaid holding in *Farrow*. Though *Tivol* narrowed *Farrow's* application in other respects,[7] *Tivol* did not abrogate *Farrow's* core conclusion that a timely filed administrative claim is not essential to civil liability under the MHRA.[8]

---

[7]*Tivol* narrowed *Farrow* insofar as it could be read to authorize a writ of mandamus to compel the MCHR to determine the timeliness of an administrative complaint where a right-to-sue letter has been requested and issued more than 180 days after a complaint has been filed. 527 S.W.3d at 844-46.

[8]In apparent response to the decisions in *Farrow* and *Tivol*, the General Assembly amended section 213.075.1 in 2017 to expressly provide that the timely filing of an administrative complaint with the MCHR is "a jurisdictional condition precedent to filing a civil action under this chapter," and to expressly permit an employer to raise the defense of an untimely filed administrative complaint at any time, including in a civil action, "regardless [] whether the employer asserted the defense before the commission."

10

Given our obligation to review *de novo* whether the trial court erred in denying the City's motions for directed verdict and for JNOV, the City's first point on appeal is denied, as the timely filing of Jones's administrative complaint with the MCHR was not essential to liability in Jones's civil action against the City.[9]  As a result, we need not and do not address whether the City's publication of a tainted promotional roster was a discrete act of discrimination pursuant to section 213.075.1, or a continuing violation so long as the promotional roster was used to neutrally promote candidates to captain based solely on their rank on the roster.[10]

Point One is denied.[11]

## Point Two

The City's second point on appeal argues that the trial court erred in admitting the testimony of Jones's expert witnesses because the testimony did not satisfy the

___

[9]*Tivol* noted that in *Farrow*, the employer failed to preserve the administrative complaint timeliness issue by raising it at the MCHR level.  527 S.W.3d at 845 (citing *Farrow*, 407 S.W.3d at 590).  Here, the record on appeal does not disclose whether the City raised the section 213.075.1 timeliness issue with the MCHR.  Thus we cannot discern whether the issue was even preserved.

[10]No Missouri case has addressed whether, under the MHRA, the publication of an eligibility or promotional roster is a discrete act of discrimination that triggers the obligation to file an administrative complaint, or is instead a continuing violation so long as the roster is used to make promotion decisions.  A handful of federal cases have addressed this issue under Title VII, with mixed results.  *Cox v. City of Memphis*, 230 F.3d 199, 204 (6th Cir. 2000) (holding that the generation of an eligibility roster that is thereafter neutrally used to promote based on rank is a discrete unlawful employment practice and not a continuing violation, and that the time to file an administrative charge begins to run when the roster is published); *Harris v. City of New York*, 186 F.3d 243, 248 (2d. Cir. 1999) (holding that the obligation to file an administrative charge did not commence until an eligibility roster expires); *Bronze Shields, Inc. v. New Jersey Dep't. Civil Service*, 667 F.2d 1074, 1083-84 (3d Cir. 1981) (holding that the time to file an administrative complaint began to run when candidates for employment were not placed on the eligibility roster); *Guardians Ass'n of New York City Police Dept. v. Civil Service Comm'n of City of New York*, 633 F.2d 232, 249-51 (2d Cir. 1980) (holding that hiring from a tainted roster is a distinct act of discrimination).

[11]The City did not assert in its answer, or in its motions for directed verdict or JNOV, that Jones's claim of discrimination was time barred because his civil action was filed more than two years after the promotional roster was published.  *See* section 213.111.1.  In any event, that time constraint is subject to modification based on whether the cause of alleged discrimination was reasonably discoverable.  We do not address this issue.

requirements of section 490.065.[12]  The City asserts that Jones offered no testimony that the expert witnesses' methodology was adequate, that their sample size was statistically significant, or that their methodology was accepted in the relevant field.

The trial court has considerable discretion when admitting evidence.  *Mansil v. Midwest Emergency Medical Services*, *P.C.*, 554 S.W.3d 471, 475 (Mo. App. W.D. 2018). We review the trial court's admission of expert witness testimony for an abuse of discretion. *Id.*  "An abuse of discretion occurs when the court's ruling is 'clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration.'" *Id.* (citing *Mansfield v. Horner*, 443 S.W.3d 627, 651 (Mo. App. W.D. 2014)).  "An appellant bears the burden of proving that the trial court abused its discretion and showing that [it] has suffered prejudice." *Matter of Care and Treatment of Lester Bradley v. State*, 554 S.W.3d 440, 452 (Mo. App. W.D. 2018).

Section 490.065 was amended effective August 28, 2017 to create a new standard for determining the admissibility of expert witness testimony in all actions except those brought under chapters 451, 452, 453, 454, 455, 211, or 487; in probate proceedings; or in proceedings in which there is no right to a jury trial.  New section 490.065.2, which is applicable to Jones's case, provides:

> 2.    In all actions except those to which subsection 1 of this section applies:

---

[12]Section 490.065, which addresses the admissibility of expert witness testimony, was amended in 2017. The parties do not dispute that the 2017 version of section 490.065 in effect at the time of trial controlled the admissibility of Jones's expert witness testimony.

12

(1) A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) The testimony is based on sufficient facts or data;

(c) The testimony is the product of reliable principles and methods; and

(d) The expert has reliably applied the principles and methods to the facts of the case.

Newly enacted section 490.065.2 models the Federal Rules of Evidence, Rules 702 through 705. The City thus invites us to apply the factors test for the admission of expert witness testimony discussed in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-94 (1993), and its progeny.

There is support for the City's general contention that federal authority is relevant to our construction and application of section 490.065.2. However, *Daubert's* factors, though relevant, are not controlling. In *State ex rel. Gardner v. Wright*, the Eastern District concluded that because section 490.065.2 is identical to Federal Rules of Evidence 702-705, federal case law is strongly persuasive in determining the admissibility of expert witness testimony. 562 S.W.3d 311, 317 (Mo. App. E.D. Aug. 21, 2018) *reh'g and/or transfer denied* (Oct. 1, 2018), *transfer denied* (Dec. 18, 2018). The *Wright* court noted, however, that:

[Federal Rules of Evidence Rule 702] does not codify the *Daubert* factors, but is "broad enough to require consideration of any or all of the specific *Daubert* factors where appropriate." Other factors may also be relevant, but "no single factor is necessarily dispositive of the reliability of a particular expert's testimony." Thus, while the rule enumerates some considerations, the inquiry about admissibility is still intended to be flexible.

13

*Id.* at 318-19 (citing *Advisory Committee Notes*, Fed. R. Evid. 702 (2000)) (internal citations omitted). Relying on federal authority, *Wright* suggested a condensed three-part test: (1) whether the expert is qualified, (2) whether the testimony is relevant, and (3) whether the testimony is reliable. *Id.* at 319 (applying the three-part admissibility test of *Johnson v. Mead Johnson & Company, LLC*, 754 F.3d 557, 561 (8th Cir. 2014)).[13]

Employing the three-part admissibility test described in *Wright*, the City's essential argument is that Jones's expert witnesses -- Kathleen Kline ("Kline") and Anne Wedow ("Wedow") -- were not qualified and their testimony was not reliable.

Under section 490.065.2, an expert is qualified by "knowledge, skill, experience, training, or education." Section 490.065.2(1). Kline and Wedow were retired KCFD Battalion Chiefs. Kline was employed with the KCFD from 1977 to 2006, while Wedow was employed with the KCFD from 1977 to 2001. During her time with the KCFD, Kline assessed more than 700 candidates for management-level fire department promotions. Wedow also possessed significant experience assessing candidates for promotions. Wedow and Kline reviewed the 2012 assessor's manual used in connection with the 2012 SE component of the captain's promotional process and found the materials to be "very similar" or "essentially the same" as the assessor's manuals they had used during past assessments. Based on this evidence, the trial court did not abuse its discretion in

---

[13]Though *Wright* interpreted and applied section 490.065.2 in a criminal case, there is no reasoned basis to construe or apply the statute differently in a civil action.

14

concluding that Kline and Wedow were qualified to testify as expert witnesses about their SE component assessments of six 2012 captain candidates, including Jones.

The City also argues that the expert witness testimony from Wedow and Kline was not reliable. Testimony is reliable if it is "based on sufficient facts or data, reliable principles and methods and reliable application thereof." *Wright*, 562 S.W.3d at 319.

Wedow and Kline evaluated the SE component videos of six candidates who participated in the 2012 captain's promotional process, including Jones. Before doing so, they reviewed the assessor manuals made available to the KCFD assessors in 2012. Two of the six candidates Wedow and Kline evaluated were African-American. Four of the candidates were Caucasian. Kline and Wedow independently viewed the videos and scored the candidates, using the same benchmark rubric prepared for the actual assessors. They then met to compare and discuss their scores, and to arrive at a consensus score. If their scores were within one point, the scores were averaged to achieve a consensus score. Wedow and Kline's assessments resulted in higher SE component scores for the African-American candidates than those given by the KCFD assessors in 2012, and lower SE component scores for the Caucasian candidates than those given by the KCFD assessors in 2012.[14] The assessment process Wedow and Kline used to reach their conclusions was substantially similar to the methodology each had used in hundreds of previous assessments each had conducted. And in general, the assessment process Wedow and

---

[14]Specifically, Wedow and Kline concluded that Jones had been under scored by 2.9 points and should have received a score of 5.4; the second African-American candidate had been under scored by 1.1 points and should have received a score of 2.0; and that the four Caucasian candidates had been over scored by between .7 and 1.9 points.

15

Kline used was substantially similar to the methodology used by KCFD assessors when the SE component was scored in 2012.

Recognizing this, the City does not challenge the reliability of the basic methodology used by Wedow and Kline, as to do so would be to effectively undermine the methodology the KCFD assessors used to score captain candidates in 2012. Instead, the City highlights differences between Wedow and Kline's SE component assessments and the SE component assessments conducted by the KCFD in 2012, and argues that these differences rendered the conclusions reached by Wedow and Kline not reliable. Specifically, the City argues that Wedow and Kline's assessments were rendered not reliable because they were conducted by two assessors instead of three; because Wedow and Kline only assessed six candidates, a sample size that was not large enough; because Wedow and Kline averaged scores to reach a consensus instead of simply discussing and reaching a consensus score; and because Wedow and Kline were not trained in advance on the assessment process.

First, the City points out that the SE component was scored in 2012 using three assessors, not two. Yet, the City offers no persuasive argument to explain why this difference rendered the Wedow and Kline assessments unreliable. In fact, the outside contractor who prepared the assessor's manual for use in connection with the 2012 captain's promotional process recommended only that more than one assessor be used to score the SE component.

Next, the City complains that Wedow and Kline used a sample size that was "too small to establish a case of 'disparate treatment through statistical analysis, at least without

16

the application of some recognized method of statistical validation.'" [Appellant's Brief p. 44-45]. The City relies on *R.T. French Co. v. Springfield Mayor's Comm'n on Human Rights*, 650 S.W.2d 717 (Mo. App. S.D. 1983). *R.T. French* involved a claim of disparate treatment where statistical samples of 3 employees and 14 employees were offered as the only evidence from which discriminatory motive or intent could be inferred. *Id*. at 723. The Southern District concluded that the samples were "too small to permit an inference of discriminatory intent." *Id. R.T. French* is of no value to the City, as it did not address the admissibility of expert witness testimony, and instead addressed only whether properly admitted statistical evidence constituted competent and substantial evidence of discriminatory intent.

In any event, the City's "sample size" argument mischaracterizes Wedow and Kline's expert testimony. Their assessment of a sampling of six candidates actually assessed by the KCFD in 2012 was not offered to establish disparate impact through statistical analysis, and was instead offered to demonstrate that at least as to the six candidates they assessed, all Caucasians candidates were over scored by the KCFD assessors, and both African-American candidates, including Jones, were under scored by the KCFD assessors. The number of candidates assessed by Wedow and Kline is irrelevant to the reliability of the scoring conclusion reached by Wedow and Kline for each assessment conducted.

Next, the City argues that Wedow and Kline averaged their scores to reach a consensus instead of negotiating to reach a consensus. However, the City does not explain how or why this effected the reliability of the assessments, particularly given evidence that

17

Wedow and Kline only averaged their scores to reach a consensus when their scores were already within one point of one another.

Finally, the City argues that Wedow and Kline's assessments were not reliable because they did not "normalize" or calibrate in advance of their assessments. The only specific concern the City raises, however, is that Wedow and Kline did not watch the training videos that the KCFD assessors watched before conducting SE component assessments in 2012. Wedow and Kline did, however, review the manual prepared for the KCFD assessors in 2012. There is no evidence to permit the conclusion that information in the training videos was materially different from the printed materials reviewed by Wedow and Kline. Moreover, Wedow and Kline testified that they have conducted hundreds of similar assessments in the past. In *Wright*, the court determined that an expert witness who had conducted more than 450 interviews as a forensic interviewer could reliably offer an opinion in the case based on that experience. 562 S.W.3d at 321 (Mo. App. E.D. Aug. 21, 2018). *Wright* reasoned that past experience may inform an expert's testimony in a case. *Id.* ""[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."" *Id.* (quoting *Kumho Tire C., Ltd. v. Carmichael*, 526 U.S. 137, 156 (1999)). Here, Wedow and Kline's lengthy experience lent itself to the reasonable conclusion that each knew how to assess the SE component. As long as an expert's testimony "rests upon 'good grounds, based on what is known' it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Johnson*, 754 F.3d at 562.

18

In summary, the trial court did not abuse its discretion in admitting the expert witness testimony of Wedow and Kline. The reliability arguments raised by the City do not render the testimony inadmissible pursuant to section 490.065.2. The differences identified by the City between the process used by KCFD assessors in 2012 and the process used by Wedow and Kline are relevant to the persuasiveness of Wedow and Kline's opinions, and thus go to the weight of the evidence and not its admissibility. "[Federal Rules of Evidence] Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony." *Lauzon v. Senco Prod., Inc.,* 270 F.3d 681, 686 (8th Cir. 2001) (citation omitted). "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [alleged] shaky but admissible evidence." *Russell v. Whirlpool Corp.*, 702 F.3d 450, 458 (8th Cir. 2012) (citing *Daubert*, 509 U.S. at 596).

Point Two is denied.

## Point Three

The City's third point on appeal argues that the trial court erred in applying a multiplier to calculate the attorneys' fee award, and in including non-statutory litigation expenses in the award of costs, because the MHRA does not expressly authorize either practice, and as a sovereign entity, the City is entitled to strict construction of the MHRA's fee and cost shifting provisions. The genesis of the City's point on appeal is one of statutory interpretation, as the City concedes that if the MHRA can be construed to authorize the

19

methods used by the trial court to calculate attorneys' fees and award costs, then the City's sovereign immunity has been waived.[15]

"Statutory interpretation is a question of law, which is subject to *de novo* review." *Hervey v. Missouri Dep't of Corr.*, 379 S.W.3d 156, 163 (Mo. banc 2012). "The primary rule of statutory interpretation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." *Id.*

The City first complains about the trial court's use of a 125% multiplier to calculate an award of attorneys' fees.[16] Section 213.111.2 provides that the trial court "may award to the plaintiff actual and punitive damages, and may award court costs ***and reasonable attorney fees*** to the prevailing party. . ." (Emphasis added.) "The trial court is deemed an expert at fashioning an award of attorneys' fees and may do so at its discretion." *Berry v. Volkswagen Group of America, Inc.*, 397 S.W.3d 425, 430 (Mo. banc 2013). The use of a multiplier to calculate an award of attorneys' fees is an authorized practice in Missouri. *Id.* at 432-33 (Mo. banc 2013). The use of a multiplier to calculate a "reasonable attorney fees" award is thus authorized by section 213.111.1.

The City acknowledges this point, but nonetheless contends that section 213.111.1 should be construed more strictly (and thus differently) when a sovereign is the defendant

---

[15]The MHRA defines "employer" to include "the state, or any political or civil subdivision." Section 213.010(7). Because "the state and its subdivisions are treated the same as other employers under the MHRA," the doctrine of sovereign immunity "offers no defense" to the award of court costs and reasonable attorneys' fees under 213.111.2. *H.S. v. Bd. of Regents, Se. Missouri State Univ.*, 967 S.W.2d 665, 673 (Mo. App. E.D. 1998).

[16]The City does not challenge the number of hours or the hourly rate used by the trial court to calculate the attorney fee award, and only argues that the use of a multiplier was error.

20

in a MHRA action. This same logic was argued and rejected in *Howard v. City of Kansas City*, 332 S.W.3d 772, 786-88, where our Supreme Court concluded as a matter of statutory construction that the authority to award punitive damages expressed in section 213.111.2 applies evenly to all employers, whether private or governmental.

The rationale in *Howard* is controlling. Because the definition of "employer" in section 213.010 expressly includes the state, or any political or civil subdivision, "it is clear the legislature intended to treat the state and its subdivisions in the same manner as it treats other employers." *Howard*, 332 S.W.3d at 788. The trial court did not abuse its discretion by concluding that it had the authority, in calculating a reasonable attorneys' fees award, to use a multiplier, even though the defendant employer in this case is a governmental entity. *Cf. Zweig v. Metropolitan St. Louis Sewer Dist.*, 412 S.W.3d 233, 249 (Mo. banc 2013) (analogously reasoning that it was not an abuse of discretion to apply a multiplier under Art. 10, section 23 of the Missouri Constitution to award "reasonable attorneys' fees" against a political subdivision).

The City next asserts that the trial court erred in including non-statutory costs in its award of court costs. This same issue was addressed, however, in *Hesse v. Missouri Dep't of Corr.*, 530 S.W.3d 1, 6 (Mo. App. W.D. 2017), where this court concluded that "court costs" as used in section 213.111.2 is not limited to statutory costs authorized by section 514.060, but also affords "trial courts discretion 'to follow the federal approach of awarding costs outside the parameters of [s]ection 514.600,' though they are not required to do so." (quoting *Williams v. Trans State Airlines*, 281 S.W.3d 854, 881 (Mo. App. E.D. 2009)). Because the state and its subdivisions are treated the same as other employers under the

21

MHRA, the City's argument that the authority to award costs pursuant to section 213.111.2 should be construed differently because the City is a sovereign entity is without merit.

Point Three is denied.

### Point Four

The City's fourth point on appeal argues that the trial court erred in denying the City's motions for directed verdict and JNOV because Jones failed to present a submissible case that he was not promoted through the 2012 captain's promotional process on the basis of race. Specifically, the City argues that Jones "failed to offer timely, probative facts showing that the City designed, intended, or used its 2012 captain's test to discriminate."

As noted, "to make a submissible case, the plaintiff must demonstrate that each and every fact essential to liability is predicated upon legal and substantial evidence." *Holmes v. Kansas City Missouri Bd. of Police Com'r ex rel. Its Members*, 364 S.W.3d 615, 626 (Mo. App. W.D. 2012) (internal quotation omitted). We "view[] the evidence in the light most favorable to the jury's verdict, giving the plaintiff the benefit of all reasonable inferences and disregarding evidence and inferences that conflict with that verdict." *Sanders*, 364 S.W.3d at 208. "A court may reverse the jury's verdict for insufficient evidence only when there is a complete absence of probative fact to support the jury's conclusion." *Id*.

To establish a claim of employment discrimination on the basis of race, Jones was required to establish that the City engaged in an unlawful employment practice proscribed by section 213.055.1(1)(a). In relevant part, section 213.055.1(1)(a) provides that it is an unlawful employment practice for an employer, because of the race of an individual, to fail

22

to hire or to otherwise discriminate against an individual with respect to terms, conditions, or privileges of employment.

Here, it was uncontested that Jones is an African-American and that Jones was employed by the City. And it was uncontested that Jones was not promoted to captain through the 2012 captain's promotional process. The only essential element of Jones's employment discrimination claim in contest was whether race was a contributing factor in the City's failure to promote Jones to the position of captain through the 2012 captain's promotional process.

Under the version of the MHRA in effect during the time frame relevant to Jones's case, Jones could sustain his burden to establish this contested essential element by showing that race was a contributing factor to the failure to promote, regardless if other factors also existed. *Alton v. Missouri Department of Public Safety*, 456 S.W.3d 134, 137 (Mo. App. W.D. 2015) (citing *Hurst v. Kansas City, Missouri School Dist.*, 437 S.W.3d 327, 339 (Mo. App. W.D. 2014)). A contributing factor is a condition that "contributes a share in anything or has a part in producing the effect." *Jones v. Galaxy 1 Marketing, Inc.*, 478 S.W.3d 556, 573 (Mo. App. E.D. 2015).

The City asserts that Jones offered no probative evidence to establish that race was a contributing factor in the City's failure to promote him to captain through the 2012 captain's promotional process. We disagree. The evidence, which we are required to view in the light most favorable to the verdict, established, among other things: that a deputy chief with the KCFD who had previously participated as an assessor believed that African-Americans were routinely under scored in the SE component, and never benefitted from

23

the bartering process used to achieve consensus scores; that Davis, one of the assessors who scored the SE component in 2012, was reputed as being tougher in his assessment of African-American candidates than Caucasian candidates; that although the KCFD's outside contractor emphasized the importance of having minority representation on the SE component assessor panel and Davis was selected as an African-American assessor to fill that role, Davis did not self-identify as an African-American; that despite the fact subjective scoring was inherent to assessment of the SE component and was thus susceptible to explicit or implicit bias, the assessors were not trained to avoid such bias; that the KCFD suffered racial tensions and issues and disproportionately hired African-American employees as compared to the City as a whole; and that two expert witnesses who were former, high-ranking, KCFD employees with substantial assessment experience concluded that six 2012 captain candidates they assessed were over scored by the SE component assessors in 2012 if they were Caucasian, and were under scored by the SE component assessors in 2012 if they were African-American. There was substantial evidence to support the jury's conclusion that Jones was not promoted through the 2012 captain's promotional process because of his race.

The City does not address the aforesaid evidence, and instead cites to federal employment discrimination cases[17] where the evidence presented was deemed insufficient to establish that a testing process used to hire or promote applicants was discriminatory. The City's reliance on these cases is unavailing. Federal employment discrimination case

---

[17]*Perez v. Illinois*, 488 F.3d 773 (7th Cir. 2007); *Washington v. American Airlines*, 781 F.3d 979 (9th Cir. 2015).

24

law is only relevant to our application of the MHRA when consistent with the plain language or meaning of the MHRA. *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818-19 (Mo. banc 2007). In *Daugherty*, our Supreme Court determined that the plain language of the MHRA required use of the "contributing factor" test, in lieu of the more demanding substantial, determining, or motivating factor test employed under Title VII.[18] *Id*. at 819.

The City also argues that Jones failed to submit probative evidence that the 2012 captain's promotional process was designed, intended or used to discriminate because of race. The City's argument relies on section 213.055.2, which provides in pertinent part that:

> [N]or shall it be an unlawful employment practice for an employer to give and to act upon the results of any professional developed ability test, provided that such test, its administration, or action upon the results thereof, is not designed, intended or used to discriminate because of race, color, religion, national origin, sex, ancestry, age or disability.

The City's argument ignores, however, that this statutory exception to the definition of an "unlawful employment practice" was submitted to the jury as an affirmative defense through Instruction No. 8, a jury instruction tendered by the City. That instruction required the jury to find in the City's favor if it believed that the 2012 captain's promotional process was a professionally developed ability test that had not been designed, intended or used to discriminate. In entering a verdict for Jones on Instruction No. 7, the jury necessarily rejected the affirmative defense submitted by the City in Instruction No. 8. The same

---

[18]*Daugherty* was overruled by the General Assembly's amendments to the MHRA in 2017.

25

evidence supporting the jury's conclusion that Jones was not promoted through the 2012 captain's promotional process because of his race also supports the jury's rejection of the suggestion that the SE component of the 2012 captain's promotional process was a professionally developed ability test that was neither designed, intended, nor used to discriminate on the basis of race.

The trial court did not err in denying the City's motions for directed verdict and for JNOV.

Point Four is denied.

## Point Five

In the City's fifth point on appeal, the City argues that the trial court abused its discretion by excluding opinion testimony from the City's expert witness -- Dr. David Morris ("Morris"). We review the trial court's exclusion of expert witness testimony for an abuse of discretion. *Mansil*, 554 S.W.3d at 475.

Morris is a principal with the outside contractor who worked with the KCFD to develop the 2012 captain's promotional process. Prior to trial, Jones submitted written interrogatories to the City, including an interrogatory that asked the City to identify expert witnesses pursuant to Rule 56.01(b)(4). The City objected to, and did not answer, the expert witness interrogatory because it was interrogatory number 33, and 16th Judicial Circuit Rule 32.2 limits the number of interrogatories that can be propounded without leave of court to 30.

A few weeks before trial, Jones's counsel communicated with the City's counsel by email to inquire about whether the City would be calling any expert witnesses to testify at

26

trial. The City's counsel advised that the City would not be calling any expert witnesses to testify at trial except "possibly in rebuttal," and specifically represented that Morris would not be testifying as an expert witness and would only be testifying as a fact witness.

At the beginning of trial, the City disclosed that it intended to call Morris as an expert witness. The trial court granted Jones's request to exclude Morris's expert testimony on the basis of unfair surprise.

During trial, the City called Morris to testify out of turn during Jones's case in chief. Morris was permitted to testify as a fact witness, but not as an expert witness, though the City asked the trial court to revisit its earlier ruling, and then made an offer of proof to describe the refused expert testimony. The City's offer of proof established that had Morris been permitted to testify as an expert witness, he would have described how the content of the 2012 captain's promotional process had been validated, and he would have presented statistical evidence that African-Americans as a group performed better during the process than Caucasians.

The City argues on appeal that the trial court abused its discretion in excluding Morris's expert testimony because the City had no obligation to disclose Morris as an expert witness because Jones's interrogatories exceeded the number permitted by local rule, and because Morris's testimony was offered in rebuttal to Jones's expert witness testimony. Neither argument has merit.

Rule 56.01(b)(4) allows a party to obtain discovery by interrogatories or by deposition of facts known or opinions held by any persons the other party expects to call as an expert witness at trial. Rule 57.01(c)(1) requires a party to respond to interrogatories

27

within thirty days of service. The City violated Rule 56.01(b)(4) and Rule 57.01(c)(1) when it failed to disclose Morris in response to Jones's interrogatory requesting the identity of expert witnesses the City expected to call at trial.

We are aware of no authority, and the City cites none, permitting a litigant to ignore the absolute duty to disclose imposed by Rule 56.01(b)(4) merely because an expert witness interrogatory is fortuitously assigned a number beyond the number of interrogatories permitted by local court rule. Although Article V, section 15 of the Missouri constitution, and Rule 50.01, permit each circuit to adopt local court rules, those rules will not be enforced if they are inconsistent with Supreme Court rules, the Constitution, or other statutory laws. *State ex rel. State v. Riley*, 992 S.W.2d 195, 196 (Mo. banc 1999). "A local court rule is inconsistent with the rules of [the Supreme] Court [of Missouri] if the local court rule specifically prohibits something th[e] [Supreme] Court's rules permit or if the local court rule specifically permits something that th[e] [Supreme] Court's rules prohibit." *Id*. To the extent 16th Judicial Circuit Rule 32.2 can be read to authorize a party to refuse to disclose the identity of expert witnesses as required by Supreme Court Rule 56.01(b)(4), the local rule would not be enforceable.[19] Even were that not the case, the City offers no excuse for its failure just weeks before trial to disclose Morris as an expert witness in email communications with Jones's counsel, or for its affirmative misrepresentation that Morris would only be used as a fact witness.

---

[19]We are not suggesting that local rules of court are not authorized to impose enforceable limits on the number of interrogatories that can be propounded. We hold only that local court rules limiting the number of interrogatories cannot be relied on to excuse the nondisclosure of information where disclosure is mandated by a specific Supreme Court Rule.

"A trial court is vested with broad discretion in administering the rules of discovery, and an appellate court should not disturb the rulings absent an abuse of discretion." *State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 927 (Mo. banc 1992). "This discretion should be aimed toward achieving fundamental fairness and avoiding unfair disadvantage." *Scheck Indus. Corp. v. Tarlton Corp.*, 435 S.W.3d 705, 719 (Mo. App. E.D. 2014). Because Morris was not disclosed in a timely manner as an expert witness in response to a duly promulgated interrogatory or in email communications on the subject just weeks before trial, and was only disclosed when trial began, "it was within the trial court's broad discretion to exclude his [expert witness] testimony as a sanction." *Wilkerson v. Prelutsky*, 943 S.W.2d 643, 649 (Mo. banc 1997).

The City also argues that it was an abuse of discretion to exclude Morris's expert testimony because Morris was called as a rebuttal witness, and rebuttal witnesses do not need to be disclosed. *See State v. Schaller*, 937 S.W.2d 285, 290 (Mo. App. W.D. 1990). However, that principle has no application here. As the defendant, the City would not ordinarily have been entitled to present witnesses or evidence during the rebuttal phase of trial. And even had the City been entitled to submit evidence during the rebuttal phase of trial, it is generally the case that "a party cannot, as a matter of right, offer in rebuttal evidence which was appropriate or should have been presented in the case in chief, even if it tends to contradict or rebut the adverse party's evidence." *Strong v. American Cyanamid Co.*, 261 S.W.3d 493, 526 (Mo. App. E.D. 2007) (overruled on unrelated grounds by *Badahman v. Catering St. Louis*, 395 S.W.3d 29, 40 (Mo. banc 2013)). Although Morris's refused expert witness testimony contradicted or rebutted the evidence offered by Jones, it

29

was testimony the City would have been expected to present in its case in chief. This is not a case where unexpected evidence or developments during trial necessitated a rebuttal witness whose testimony could not otherwise have been reasonably anticipated as necessary to the City's case in chief.

The trial court did not abuse its discretion in excluding Morris's expert witness testimony.

Point Five is denied.

## Pending Motion for Attorneys' Fees

Prior to submission of this case, Jones filed a motion requesting an award of attorneys' fees incurred on appeal ("Motion"). In the Motion, Jones noted that the trial court entered an order on April 4, 2018 authorizing Jones to submit a supplemental request for an award of attorneys' fees incurred in connection with post-trial briefing, though the trial court's order noted that a request for supplemental attorneys' fees would not be ruled on until disposition of any appeal. Jones's Motion thus requests an award of attorneys' fees for the period between the entry of Judgment and the City's filing of this appeal, and for defending this appeal.

Section 213.111.2 authorizes the award of reasonable attorneys' fee to the prevailing party. "This includes fees incurred on appeal from the trial court's judgment." *Soto v. Costco Wholesale Corp.*, 502 S.W.3d 38, 58 (Mo. App. W.D. 2016). Because we are affirming the trial court's judgment in favor of Jones, Jones is the prevailing party on appeal. Therefore, his Motion is granted. However, "[a]lthough appellate courts have authority to allow and fix the amount of attorneys' fees on appeal, we exercise this power

30

with caution, believing in most cases that the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested." *Turner v. Kansas City Public Schools*, 488 S.W.3d 719, 726 (Mo. App. W.D. 2016). That is particularly true when, as here, the Motion includes a request for a supplemental award of attorneys' fees for post-judgment proceedings that occurred in the trial court. Accordingly, we remand this matter to the trial court to determine a reasonable award for attorneys' fees incurred by Jones on appeal, and in connection with post-judgment proceedings in the trial court.

## Conclusion

The trial court's Judgment is affirmed. We remand this matter to the trial court to determine a reasonable award for attorneys' fees incurred by Jones on appeal, and in connection with post-judgment proceedings in the trial court.


_Cynthia L. Martin_____
Cynthia L. Martin, Judge


All concur

31