**MISSOURI CORRECTIONS OFFICERS ASSOCIATION,**
Appellant,

v.

**MISSOURI DEPARTMENT OF CORRECTIONS,**
Respondent.

No. WD 75418.

Missouri Court of Appeals, Western District.

Aug. 27, 2013.

Chris Koster, Attorney General, and J. Andrew Hirth, Deputy General Counsel, Jefferson City, MO, for Respondent.

Heidi D. Vollett, William E. Peterson, and Shelly A. Kintzel, Jefferson City, MO, for Appellant.

Before Division One: MARK D. PFEIFFER, P.J., and VICTOR C. HOWARD and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

Appellant, The Missouri Corrections Officers Association, Inc., is a labor organization whose members include the corrections officers who staff prisons run by the Missouri Department of Corrections ("the Department" or "DOC"). The Association is the exclusive bargaining representative for these officers. The Association and DOC entered into a Labor Agreement in

2007. In response to reductions in its budget, the Department changed its personnel policies in 2009 to limit officers' accrual of state compensatory time. The Association contends that these policy changes violate the Labor Agreement. The Association filed this lawsuit in the Circuit Court of Cole County seeking declaratory relief for DOC's alleged violation of the Labor Agreement. The circuit court granted DOC's motion for summary judgment, and the Association appeals. Because the Department's revisions to its method of calculating state compensatory time violate the parties' Labor Agreement, we reverse.

### Factual Background

With exceptions not relevant here, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207(a)(1), 207(o)(1), requires DOC to compensate corrections officers who actually work more than forty hours in a single work week at "a rate not less than one and one half hours for each hour of employment for which overtime compensation is required." *See also* 29 C.F.R. § 553.22(b). Corrections officers may also be eligible to receive compensation, paid at their regular (i.e., "straight time") pay rate, for working hours in excess of an assigned daily shift, even if they do not meet the forty-hour FLSA threshold. We refer to this latter benefit as "state compensatory time."

In February of 2007, DOC and the Association entered into the Labor Agreement which remains in effect today. The Agreement gives DOC the authority to direct the corrections officers and conduct business as it sees fit, "except as modified by the terms of this Agreement." The Department explicitly retains the right to "hire, assign, reassign, transfer, promote and to determine hours of work and shifts and assign overtime." The Labor Agreement also authorizes DOC to "temporarily assign employees to a different work assignment on a daily basis."

Under the FLSA and the Labor Agreement, the Department may compensate corrections officers for federal overtime or state compensatory time by providing them with compensatory paid time off. The Agreement specifically addresses use of compensatory time in the form of paid leave. Section 7.9 of the Agreement provides:

> Employer is responsible for compensatory time off and proper staffing of facilities. Employees may request to utilize compensatory time. The Employer will respond to the Employee's written request either approved or denied no later than fourteen (14) days after receiving the request. ***Employer will provide fourteen (14) days prior notice before scheduling mandatory compensatory time reduction.***

(Emphasis added.) The parties agree that § 7.9 requires DOC to give officers at least fourteen days' notice before *requiring* them to use "banked" state compensatory time as compensatory leave.

Although the Labor Agreement contains no definition of "compensatory time," DOC does not dispute that the definitions and terminology in its Department Manual are incorporated into the Labor Agreement. The Department Manual defines how state compensatory time and federal overtime are earned by correctional officers. The Manual differentiates between "code 1" and "code 2" employees. All officers that would be affected by the outcome of this case are classified as code 2 employees. Code 1 employees are "exempt" employees who do not qualify for overtime pay under

the FLSA.[1] Both code 1 and code 2 employees can earn "state compensatory time," however. The Manual describes the accrual of state compensatory time differently for each category of employee. It states:

State Compensatory Time: Hours calculated at straight time when:

1. A code 1 employee works in excess of an assigned daily shift or physically works over 40 hours in a standard work week.

2. A code 2 employee works in excess of an assigned daily shift, but has not physically worked in excess of 40 hours during a standard work week.

The Manual also provides that, with the exception of certain employees who work twelve-hour shifts, a code 2 employee earns federal overtime, at a time and one-half rate, when he or she "physically works in excess of 40 hours during a work week."

Due to significant overtime budget cuts, the DOC modified the "Compensatory Time Control" section of its Department Manual in March 2009. Section III.H of the Department Manual was changed to read as follows (additions denoted in bold italics, deletions by strikethrough):

H. Compensatory Time Control

1. The chief administrative officer/designee will continuously monitor compensatory time balances in an attempt to keep those balances at reasonable levels.

2. Code 2 employees who work at a correctional center, community release center, or community supervision center:

a. In order to manage the accrual of federal overtime or state compensatory time, the chief administrative officer/designee may adjust the work schedule of such an employee during the employee's standard work week.

(1) *Overtime worked and compensatory time used within the same week will be documented via the Application for Leave/Overtime form and entered accordingly into the SAM–II Payroll System.*

*(a)* The chief administrative officer should notify the employee about the schedule change at the earliest practical time.

*(b)* No schedule change may be made for the purpose of managing overtime or compensatory time unless the employee is notified 12 hours prior to the start of the affected shift or unless the employee volunteers for the schedule change.

b. These employees may use accrued balances of federal overtime, state compensatory time, or holiday time as compensatory leave when both the employee and supervisor agree on such use, *however III.H.2.a is also applicable to state compensatory time usage.*

1. The principal exemptions to FLSA coverage are found in 29 U.S.C. § 213. *See, e.g., Christopher v. SmithKline Beecham Corp.,* —— U.S. ——, 132 S.Ct. 2156, 2162, 183 L.Ed.2d 153 (2012) (addressing exemption in 29 U.S.C. § 213(a)(1) for workers "employed . . . in the capacity of outside salesman"); *Long Island Care at Home, Ltd. v. Coke,* 551 U.S. 158, 162, 127 S.Ct. 2339, 168 L.Ed.2d 54 (2007) (addressing exemption in 29 U.S.C. § 213(a)(15) for certain "domestic service employment"); *Auer v. Robbins,* 519 U.S. 452, 454, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (addressing exemption in 29 U.S.C. § 213(a)(1) for "bona fide executive, administrative, or professional" employees, in case involving sergeants and lieutenant in St. Louis Police Department).

c. The chief administrative officer/designee may not require these employees to use federal overtime, ~~state compensatory time,~~ or holiday time as compensatory leave.

Following the March 2009 modifications to the Department Manual, DOC took the position that it could adjust corrections officers' schedules mid-week to prevent them from accruing state compensatory time. According to the Department, state compensatory time is only available if an officer (1) works hours in excess of an assigned daily shift, (2) does not *physically* work over forty hours during the work week in question, *and* (3) is compensated for more than forty hours of work in that week (this could happen, for example, where part of the officer's compensation during the week is due to a paid holiday, or sick leave). Therefore, the Department contends that, if an officer works hours in excess of an assigned shift earlier in a work week, it can reduce the officer's hours later in the same week, keep the officer from being compensated for more than forty total hours, and thereby prevent any state compensatory time from accruing.

The Department's position is highlighted by the following example, which was offered by one of the Department's witnesses during his deposition:

Example 3: The officer works two extra hours on Monday, then works his regular shift the rest of the week, but leaves two hours early on Friday. The officer records 40 hours at the end of the week.

DOC contends that in this scenario, the officer earns *no* state compensatory time, because he is not being paid for more than forty hours during the work week.

The Association argues that the Department's interpretation of its scheduling authority violates § 7.9 of the Labor Agreement, because the DOC is effectively *requiring* officers to use state compensatory time earned earlier in a work week as compensatory leave later in the same week, even though § 7.9 requires DOC to give officers fourteen days' notice before a "mandatory compensatory time reduction." [2] The Association filed this lawsuit in the Circuit Court of Cole County, seeking a declaratory judgment that the Department's position concerning the accrual of state compensatory time violates the Agreement. The circuit court ultimately granted summary judgment to DOC, accepting its interpretation of the Labor Agreement and Department Manual. The Association appeals.

## Analysis

Because this case was decided on summary judgment, and the disputed issues involve contract interpretation, we review the circuit court's judgment *de novo,* with no deference to its decision. *ITT Comm. Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993); *Matt Miller Co. v. Taylor–Martin Holdings, LLC,* 393 S.W.3d 68, 72 (Mo. App. S.D.2012).

The Association argues that the circuit court erred in granting DOC's motion for summary judgment because the Department's interpretation of how state compensatory time operates is inconsistent with the Labor Agreement, and the definition of "state compensatory time" in the Department Manual. We agree.

"The primary rule in interpretation of contracts is to ascertain the parties' intent and give effect to that intent. To do that,

---

**2.** The Association makes no argument that the Department is prevented by § 7.9 from adjusting officers' schedules to avoid the accrual of federal overtime.

this court is to rely on the plain and ordinary meaning of the words in the contract and consider the document as a whole." *Exec. Bd. of Mo. Baptist Conv'n v. Windermere Baptist Conf. Ctr.*, 280 S.W.3d 678, 687 (Mo.App. W.D.2009) (internal citation and quotation marks omitted). "If a contract is unambiguous, 'the intent of the parties is to be discerned from the contract alone' based on the plain and ordinary meaning of the language used." *Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 846 (Mo. banc 2012) (quoting *Debaliviere Place Ass'n v. Veal*, 337 S.W.3d 670, 676 (Mo. banc 2011)).

The Department Manual provides that state compensatory time accrues when "[a] code 2 employee works in excess of an assigned daily shift, but has not physically worked in excess of 40 hours during a standard work week." The trial court found, and DOC does not dispute, that this definition was incorporated into the Labor Agreement.[3] Mirroring this provision, the Department Manual specifies that, with the exception of certain employees working twelve-hour shifts, a code 2 employee

earns *federal overtime*, at time-and-a-half, when he or she "physically works in excess of 40 hours during a work week."

The provisions of the Department Manual addressing state compensatory time and federal overtime for code 2 employees work seamlessly together. *If* a code 2 employee "physically works in excess of 40 hours during a work week," he or she earns federal overtime. (The Manual's requirement of more than forty hours of "physical work" parallels the FLSA's overtime threshold.[4]) On the other hand, the Manual makes clear that a code 2 employee can only earn *state compensatory time* if the employee "has ***not*** physically worked in excess of 40 hours during a standard work week." (Emphasis added.) This caveat ensures that there will never be a circumstance in which the employee earns *both* federal overtime and state compensatory time (which could result in compensation at two and one-half times the employee's regular pay rate). The Manual's definition of state compensatory time embodies this straightforward principle: a

---

3. In the circuit court, DOC's memorandum supporting its motion for summary judgment acknowledged that the parties entered into the Labor Agreement "[a]gainst the backdrop of FLSA, Missouri law, and the longstanding policies in the Department Manual." It later observed that "[t]he Agreement does not defined [sic] 'compensatory time,'" but explained that "[t]hat is not surprising, however, as the Agreement simply incorporates many sections of existing Department Policy by reference."

4. For purposes of the FLSA, "work" has been interpreted to include "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business," *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944), as well as "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a pre-

scribed work place." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 690–91, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946); *see generally* 29 C.F.R. § 785.7. Because of this definition of "work," paid time off (like vacation time and sick leave) does not qualify as "work" under the FLSA, and is not counted in determining whether a worker has met the threshold to accrue federal overtime. *See, e.g., Chavez v. City of Albuquerque*, 630 F.3d 1300, 1310 (10th Cir.2011); *Boelter v. City of Coon Rapids*, 67 F.Supp.2d 1040, 1048 (D.Minn.1999) (the FLSA " 'does not require that an employer pay overtime for vacation, holiday and sick leave time off, and such time need not be counted as "hours worked" for overtime compensation' ") (quoting *York v. City of Wichita Falls*, 763 F.Supp. 876, 885 (N.D.Tex.1990)). As explained by DOC's corporate representative during his deposition, the Department Manual's use of the phrase "physically worked" is functionally identical to the definition of "work" under the FLSA.

code 2 employee earns state compensatory time for hours worked in excess of an assigned daily shift, *unless* the employee is entitled to federal overtime for those hours.

The provision of the Department Manual addressing the accrual of state compensatory time for code 2 employees also jibes with the provision addressing when exempt, code 1 employees earn state compensatory time. The Manual provides that "[a] code 1 employee [accrues state compensatory time when he or she] works in excess of an assigned daily shift." [5] Thus, code 1 employees earn state compensatory time *whenever* they work "in excess of an assigned daily shift." This reflects the Department's recognition that requiring employees to work hours beyond the regular shift for which they were scheduled presents a hardship or burden, for which compensatory time is warranted.[6] The Manual affords code *2* employees this same right, *except in circumstances where they would be eligible for federal overtime* by physically working more than forty hours during the week. To adopt the Department's reading of the Manual's state compensatory time provisions would result in *code 1* employees receiving an additional benefit based on the simple fact that they worked hours beyond an assigned shift, while *code 2* employees would not. The Department offers no persuasive reason to adopt such a reading, which would result in an asymmetry between the treatment of code 1 and code 2 employees.

The circuit court held that the Manual's statement that a code 2 employee is only eligible for state compensatory time if he or she "has not physically worked in excess of 40 hours during a standard work week," "implies that the officer has already earned more than 40 hours that week, but due to vacation time or sick leave he was not physically present at the job site for all of them." We fail to see any basis in the language of the Manual for this implication. The Manual imposes only two conditions on a code 2 employee's right to state compensatory time: (1) work in excess of an assigned daily shift, and (2) physically working forty hours or less during that week. There is no textual basis for adding a third criterion: that the officer "has already earned more than 40 hours that week, but due to vacation time or sick leave he was not physically present at the job site for all of them." [7] As the

---

**5.** The Manual also provides that a code 1 employee earns state compensatory time if he or she "physically works over 40 hours in a standard work week." This provision—which has no parallel with respect to code 2 employees—reflects the fact that code 1 employees are not otherwise eligible for federal overtime, because they are exempt from the FLSA's overtime mandate. For non-exempt code 2 employees, of course, this situation is addressed by the FLSA.

**6.** Other provisions of the Manual similarly recognize that working in excess of an assigned daily shift represents a special demand on corrections officers, separate from working more than forty hours in a week. The Manual specifies that "[t]he ability to work beyond a normal scheduled shift, or more than 40 hours in a standard work week, is an essential function of all custody classifications," and that "[w]hen requested by their supervisor, employees are required to work beyond a normal scheduled shift and work more than 40 hours in a standard work week." The Manual warns that, if employees refuse to work more than forty hours, or more than an assigned shift, they "may be subject to disciplinary action."

**7.** In a similar vein, the Department's briefing seeks to insert additional language into § 7.9 of the Labor Agreement, arguing that the section only addresses officers' rights "to use their *accumulated balances* of compensatory time ... as extra leave." (Emphasis added.) Once again, however, no reference to "accumulated balances" appears in § 7.9 itself, and we refuse to insert one.

Association notes, "[a]n interpretation that inserts language into a contract is forbidden. In interpreting the contract we must be guided by the well-established rules that we cannot make contracts for the parties or insert provisions by judicial interpretation." *The Renco Grp., Inc. v. Certain Underwriters at Lloyd's, London,* 362 S.W.3d 472, 479 (Mo.App. E.D.2012); *see also, e.g., L & K Realty Co. v. R.W. Farmer Constr. Co.,* 633 S.W.2d 274, 280 (Mo.App. W.D.1982) ("the courts are to determine what the parties intended by what they said and not by what they might have said or what perhaps they should have said"). We may not insert additional conditions on the accrual of state compensatory time into the Labor Agreement or Department Manual under the guise of "interpretation."

The Department points to the provision of the Department Manual which provides that, "[i]n order to manage the accrual of ... state compensatory time, the chief administrative officer/designee may adjust the work schedule of such an employee during the employee's work week," but must provide the employee with no less than twelve hours' notice of such a schedule change. The Department contends that, if we read the state compensatory time provisions of the Manual as the Association advocates, we would render the schedule-change and twelve-hour-notice provisions meaningless, because DOC could *never* alter the schedule of a code 2 employee to prevent the accrual of state compensatory time. We disagree.

The Department correctly notes that "[i]n construing contractual provisions, this court is to avoid an interpretation that renders other provisions meaningless." *Nodaway Valley Bank v. E.L. Crawford Constr., Inc.,* 126 S.W.3d 820, 827 (Mo. App. W.D.2004). "It is preferable to attribute a reasonable meaning to each clause and harmonize all provisions, rather than leave some provisions non-functional or nonsensical." *Id.; accord, State v. Moore,* 303 S.W.3d 515, 520 (Mo. banc 2010). As the Association points out, however, there are several instances in which a supervisor could make mid-week schedule changes to prevent the unnecessary accrual of state compensatory time, even under our reading of the state compensatory time provision. In fact, one example comes from the March 10, 2009 memorandum which announced the Department's new state compensatory time policy. The memorandum describes the following scenario:

> An employee is scheduled to participate in training on Thursday, their normal regular day off. Supervisors notify the employee on Tuesday that their regular days off have been changed, for that work week, to Friday and Saturday. This allows the employee to participate in training on Thursday and avoid compensatory time accrual.

In the cited example, by making a schedule change more than twelve hours prior to the Thursday training session, the supervisor could convert the employee's day off into an "assigned daily shift." When the employee participates in the training program at that time, they will no longer be "work[ing]" in excess of an assigned daily shift," and therefore will *not* accrue state compensatory time they otherwise would have earned. Thus, as the Manual contemplates, the accrual of state compensatory time *can* be avoided, prospectively, by exercising the rescheduling authority the Manual affords.

Other examples are legion. For example, on a Monday or Tuesday, a supervisor may anticipate that additional staffing is needed at a correctional facility from 5:00 p.m. to 7:00 p.m. on Thursday (due to leave, termination, or illness of employees;

arrival of new prisoners; or other special circumstances). The supervisor wishes to have a corrections officer work during that time period to address the unusual staffing need, but that correctional officer's normal "assigned daily shift" is from 9:00 a.m. to 5:00 p.m. If the supervisor merely asks the employee to stay two hours later on Thursday, without making any other schedule change, the employee will accrue state compensatory time (or potentially federal overtime), because they will work hours "in excess of an assigned daily shift" on Thursday. Under the rescheduling authority given by the Department Manual, however, the supervisor can avoid this result by changing the employee's daily shift from 9:00 a.m. to 5:00 p.m. on Thursday, to 11:00 a.m. to 7:00 p.m. By making this change, the two hours during which the supervisor required additional staffing (from 5:00 p.m. to 7:00 p.m.) would no longer be "in excess of an assigned daily shift," and the employee would accrue no state compensatory time.

The Department also argues that it retained the right to modify the Department Manual at any time, and therefore the Association and its members have no enforceable rights in the manner by which the Department previously recognized state compensatory time. But whether the Department *could* change the Manual's definition of "state compensatory time" (an issue we do not address), it has not done so. We hold only that under the *current* definition of "state compensatory time," which the trial court found had been incorporated into the Labor Agreement (a proposition the Department does not dispute), the Department may not extinguish an employee's right to state compensatory

time by making schedule changes *after* beyond-shift hours are worked.

In their briefing, the parties devote considerable space to arguing over precisely *when* state compensatory time accrues. Using Example 3,[8] the Association argues that the corrections officer accrued state compensatory time on Monday, as soon as he worked two hours beyond his "assigned daily shift." DOC, on the other hand, argues that state compensatory time accrues only at the end of the work week, when it can be determined whether or not the employee "physically worked in excess of 40 hours during a standard work week." Because, according to the Department, state compensatory time does not accrue (or become "vested") until the end of the week, the Department argues that it is free to reschedule the employee *during* the week, and thereby avoid the accrual of state compensatory time in the first place.

With all respect to the parties, we believe their dispute over *when* state compensatory time accrues is beside the point. The fact is, at the end of workday on Monday in Example 3, the officer will know that he has earned *either* state compensatory time (if, at week's end, he has *not* "physically worked in excess of 40 hours"), *or* federal overtime (if, at week's end, it turns out that the employee *has* "physically work[ed] in excess of 40 hours"). Reducing the employee's schedule for the remainder of the week, *after* extra-shift hours have been worked, cannot change this: later scheduling changes cannot alter the fact that, on Monday, the officer physically worked "in excess of an assigned daily shift." While the precise consequences of that additional work may not be knowable until the week is over, the

---

**8.** The reader will recall that, in Example 3, "[t]he officer works two extra hours on Monday, then works his regular shift the rest of the week, but leaves two hours early on Friday. The officer records 40 hours at the end of the week."

Department cannot eliminate any consequence whatsoever.

In attempting to eliminate an officer's state compensatory time *after* beyond-shift hours are worked, DOC is essentially implementing a "mandatory compensatory time reduction," without fourteen days' notice, in violation of § 7.9 of the Labor Agreement. The Department's own documents acknowledge this. Thus, § III.H.2.a.1 of the modified Department Manual specifically refers to "[o]vertime worked and *compensatory time used* within the same week," making clear that this is not a question of preventing *the accrual* of state compensatory time, but instead of requiring workers to *use* their compensatory time as leave. An example contained in the March 2009 memorandum announcing the policy change makes the same point. It gives the following example:

> An unforeseen circumstance resulted in an employee working 2 hours in addition to their regularly scheduled shift on Monday. Supervisory staff notifies the employee, with 12 hours notice, that they should report in 2 hours late on Tuesday. In this instance, a leave application reflecting the accrual of 2 hours of state overtime earned on Monday and *a second leave application reflecting the usage of 2 hours state compensatory time on Tuesday* must be completed.

The Department's own documents demonstrate that it is attempting to use its scheduling authority to require employees to "use" their state compensatory time in the same week in which the compensatory time is earned. In the Labor Agreement, however, DOC gave up the right to require corrections officers to "use" compensatory

time as paid leave on less than fourteen days' notice.

The DOC's brief seeks to minimize the effect of these statements, asserting that the quoted language from the Manual, and the example in the March 2009 memorandum, "may have proven more confusing than clarifying." But these passages are perfectly clear, and fully consistent with our reading of the Manual's straightforward definition of "state compensatory time." The only "confus[ion]" arises from DOC's current litigation position.

We close by emphasizing the limited nature of our holding. We hold only that, after a corrections officer works hours in excess of his or her assigned daily shift, the Department may not use later scheduling changes to alter the status of the earlier beyond-shift hours as state compensatory time. We do not address the scope of the Department's authority to modify corrections officers' schedules (except to the extent such schedule changes purport to affect the accrual of state compensatory time for hours previously worked).[9] Nor do we address whether DOC has the power to modify the provisions of its Department Manual on which this opinion relies.

### Conclusion

We reverse the circuit court's judgment, and remand the case to the circuit court for entry of an order granting summary judgment to the Association, on terms consistent with this opinion.

All concur.

---

9. Thus, using Example 3 yet again, we do not address whether DOC has the authority to reduce the officer's Friday shift to six hours. We hold only that such a schedule modification does not change the fact that the officer earned two hours of state compensatory time on Monday.